UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL MANGIARACINA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>BNSF RAILWAY COMPANY, et al.,<br><br>　　　　Defendants. | Case No.16-cv-05270-JST<br><br>**ORDER REGARDING MOTION TO REMAND AND MOTION TO DISMISS**<br><br>Re: ECF Nos. 15, 9 |

Before the Court are Plaintiffs' motion to remand and Defendant Contra Costa Transportation Authority's motion to dismiss. ECF Nos. 15, 9. Although Contra Costa Transportation Authority has since been dismissed from this case, Defendant Contra Costa County joined in that motion to dismiss. See ECF Nos. 24, 41, 42.[1] The Court will deny both motions.

## I.　BACKGROUND

Joel Mangiaracina and his wife, Ranee Chaloeicheep, (collectively "Plaintiffs") originally filed this personal injury action in the Contra Costa County Superior Court on July 29, 2016. ECF No. 1-1. In their Complaint, the Plaintiffs assert claims for negligence and loss of consortium against BNSF Railway Company ("BNSF"), National Railroad Passenger Corporation ("Amtrak"), Contra Costa Transportation Authority ("CCTA"), and Contra Costa County ("the County"). Id.

According to the Complaint, there is a waterway known as the "Middle River" located near

---

[1] In its joinder, Contra Costa County also requested judgment on the pleadings under Rule 12(c). ECF No. 24. However, the County did not properly notice this additional motion as required by the Local Rules. Civ. L.R. 7-2(a). In addition, the County filed this request the day before the Plaintiff's opposition to the motion to dismiss was due, and the Plaintiffs objected to the proposed shortened briefing schedule. ECF No. 26 at 16. The Court therefore does not consider the request.

the town of Bixler in Contra Costa County, California. Id. ¶ 9. BNSF owns a railroad track just north of the area where individuals may access the Middle River. Id. ¶ 10. BNSF leases the track to Amtrak, which uses the track to transport passengers between Bakersfield and Oakland. Id. ¶ 10. The BNSF track crosses Fallman Road ("the Crossing") near the Middle River access point. Id. ¶ 10. As of August 2015, the Crossing "did not have bells, whistles, horns, gates, flashing lights or other active warning devices installed to warn individuals that a train was approaching the Crossing." Id. ¶ 13.

The area immediately south of the Crossing and adjacent to the Middle River ("the Subject Area") "was consistently used by individuals to drive and park vehicles, congregate, picnic, swim, fish, as well as to launch and operate small boats, rafts and jet skis." Id. ¶ 11. The area "was well known among local residents as a recreational area used by scores of individuals on a daily basis, especially during the summer months." Id. The County owns or leases a portion of the Subject Area and the roadways leading to the Subject Area. Id. ¶ 12. The roadways leading to the Subject Area did not have gates or other barriers designed to stop individuals from accessing, congregating in and/or using the Subject Area to access the Middle River for recreational purposes. Id. ¶ 14. According to the Complaint, the Defendants "knew that there had been multiple instances of trains striking vehicles at the Crossing resulting in injuries." Id. ¶ 17.

On August 20, 2015, Plaintiff Mangiaracina drove his truck to the Middle River access point. Id. ¶ 9. "[I]n an attempt to clear space for another recreational user to drive away, and in order to turn around and leave himself, [Mangiaracina] drove his pick-up truck (the 'Truck'), with a jet ski on the attached trailer, onto the BNSF Track at the Crossing." Id. ¶ 18. "While the Truck was stopped and waiting on the BNSF Track at the Crossing, Amtrak Train No. 713 (the 'Train'), heading West on the San Joaquin Route at a high rate of speed, struck the Truck and sent it flying through the air and landing in the water, thereby causing him to suffer severe, life threatening and permanent injuries." Id.

Defendant National Railroad Passenger Corporation ("Amtrak") subsequently removed this action to federal court on the ground that it is a federally chartered railroad that is majority-owned by the United States, having obtained the consent to removal from all defendants in this

action. ECF No. 1.

The Plaintiffs now move to remand this case back to the Contra Costa Superior Court, and the County moves to dismiss the Plaintiffs' complaint pursuant to Rule 12(b)(6). ECF Nos. 9, 15, 24.

## II. LEGAL STANDARDS

### A. Motion to Remand

A defendant may remove a civil action filed in state court to federal court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). There is "a 'strong presumption against removal jurisdiction [which] means that the defendant always has the burden of establishing that removal is proper.'" Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting Gaus, 980 F.2d at 566).

### B. Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this standard is not a probability requirement, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). In determining whether a plaintiff has met this plausibility standard, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

## III. DISCUSSION

### A. Request for Judicial Notice

Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice on its own or at the request of any party. Id. 201(c).

Pursuant to the County's request, the Court takes judicial notice of the original Complaint in this action and the notice of removal because they are "matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001) (quoting Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986)); see also ECF Nos. 9-2, 24.[2] For the same reason, the Court also takes judicial notice of the companion personal injury case currently pending in Contra Costa County Superior Court, Crane v. BNSF et al., Case No. C16-01418. ECF No. 15-2 at 2-18.

### B. Motion to Remand

The Court has original jurisdiction over this action because Amtrak is a federally chartered corporation of which the United States is the majority stockholder. See 28 U.S.C. §§ 1349, 1331; Vasquez v. North County Transit Dist., 292 F.3d 1049, 1060 (9th Cir. 2002) (citing Hollus v. Amtrak N.E. Corridor, 937 F.Supp. 1110, 1113–14 (D.N.J. 1996)). Based on that federal jurisdiction, Amtrak properly obtained the consent of all other Defendants and timely removed this action to federal court. See 28 U.S.C. §§ 1441(a), 1446(b); ECF No. 1 ¶ 4.

Despite the presence of federal jurisdiction and the Defendants' compliance with removal procedures, Plaintiffs argue that the Court may nonetheless decline to exercise its jurisdiction and remand this case back to the Contra Costa Superior Court. ECF No. 15. Plaintiffs present several theories in support of this argument.

First, the Plaintiffs contend that removal under Section 1349 is not mandatory because that statute does not provide for an independent right of removal. A sibling court in this district has

---

[2] CCTA also requested that the Court take judicial notice of the fact that it is a public entity. ECF No. 9-2 ¶ 3. Because CCTA is no longer a party to this case, the Court denies that request as moot. See ECF Nos. 41, 42.

previously squarely rejected that argument, see Popal v. National Railroad Passenger Corporation (Amtrak), 2015 WL 1405882, at *1 (N.D. Cal. 2015), and this Court rejects it now.

Next, Plaintiffs argue that 28 U.S.C. § 1367(c) gives the Court discretion to abstain from exercising its jurisdiction.

As a preliminary matter, "[Section] 1367(c) permits discretionary dismissal only of claims that invoke *supplemental* jurisdiction, and not of those that satisfy an independent basis of federal subject matter jurisdiction such as diversity of citizenship or federal question." Wright & Miller, 13D Fed. Prac. & Proc. Juris. § 3567.3 (3d ed.) (emphasis added). Here, the Court has federal question jurisdiction over all claims against Amtrak based on its special status as a federally-chartered company that is majority-owned by the United States. Hancock Financial Corp. v. Federal Sav. and Loan Ins. Corp., 492 F.2d 1325, 1329 (9th Cir. 1974) (explaining that, by virtue of Section 1349, "a federal question is involved . . . in suits where over one-half of the stock of the federal corporation is owned by the United States"). Therefore, Section 1367(c) does not give the Court discretion to remand Plaintiffs' claims against Amtrak.

To the extent the Court must exercise its supplemental jurisdiction as to the Plaintiffs' claims against the other Defendants,[3] it has discretion to remand those claims under Section 1367(c). Section 1367(c) provides the following:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

---

[3] Some courts have purported to exercise original jurisdiction over claims against Amtrak and supplemental jurisdiction over related claims against other defendants in the same action. See, e.g., Rosenthal v. City of San Leandro, 2002 WL 1813099, at *1 (N.D. Cal. 2002). However, it is not clear whether Section 1349 actually requires the exercise of supplemental jurisdiction in such circumstances given that the statute confers original jurisdiction over "any civil *action* by or against any corporation" that is federally-chartered and majority-owned by the United States. See 28 U.S.C. § 1349 (emphasis added). The parties did not address this statutory language in their briefing, and the Court does not decide the issue.

5

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

There is merit to the Plaintiffs' argument that this case presents "exceptional circumstances" under Section 1367(c)(4). ECF No. 31. After all, there is a companion personal injury action currently pending in Contra Costa County Superior Court which involves the same operative facts and in which Plaintiff Mangiaracina is named as a defendant. ECF No. 15-2 at 2-18. As a result, remanding this action would allow the two cases to be consolidated, thus promoting judicial economy and avoiding potentially inconsistent results. See Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California, 24 F.3d 1545, 1557 (9th Cir. 1994) ("[C]ompelling reasons for the purposes of subsection (c)(4) similarly should be those that lead a court to conclude that declining jurisdiction best accommodate[s] the values of economy, convenience, fairness, and comity.") (internal quotation marks and citations omitted), overruled on other grounds by California Dept. of Water Resources v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008). Courts have found compelling reasons to decline the exercise of supplemental jurisdiction in similar circumstances. See, e.g., Hays County Guardian v. Supple, 969 F.2d 111, 125 (5th Cir. 1992) (holding that the district court did not abuse its discretion under Section 1367(c)(4) because "[a]djudicating state-law claims in federal court while identical claims are pending in state court would be a pointless waste of judicial resources").

However, even if one of the conditions under Section 1367(c) is met, "the exercise of discretion, of course, still is informed by whether remanding the pendent state claims comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness, and comity." Executive Software, 24 F.3d at 1557 (internal quotation marks and citations omitted). One key consideration counsels against exercising that discretion here. As explained above, the Court does not have discretion to remand the *entire* action because it has original jurisdiction over the claims against Amtrak and Amtrak properly removed this case with the consent of all other Defendants. Therefore, the Court's discretion could only be used, if at all, to remand the claims against the other Defendants while keeping the claims against Amtrak in federal court. Such a result would further complicate and undermine judicial economy in these

6

proceedings, by creating three separate cases instead of two. Plaintiffs states their concern that he

> will be prejudiced and unfairly burdened if two pending personal injury cases cannot be consolidated . . . (one case in federal court and one in state court; both arising out of the same nucleus of facts from a single motor vehicle/train collision; both involving Mr. Mangiaracina, one as a plaintiff and the other as a defendant). He will likely have to give two depositions, sit through two trials, submit to two trial witness/party examinations and two cross-examinations. Defendants will have multiple opportunities to question and cross-examine him, when procedural rules usually allow parties only one opportunity.

ECF No. 31 at 7. But the creation of a triad of cases will only increase, rather than lessen, the duplication of effort and the risk of inconsistent rulings. The Court therefore declines to exercise its discretion under Section 1367(c) to remand the claims against the non-Amtrak Defendants.

### C.   Motion to Dismiss under Rule 12(b)(6)

The County moves to dismiss Plaintiffs' Complaint on the ground that it is immune from liability because it is a public entity. ECF Nos. 9-1, 24.

The Plaintiffs' initial Complaint failed to state a viable claim against the County. "California public entities are not subject to common law tort liability; all liability must be pursuant to statute." AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 638 (9th Cir. 2012) (citing Cal. Gov. Code § 815(a)). "In the absence of such a statute, a public entity's sovereign immunity bars the suit." In re Groundwater Cases, 154 Cal. App. 4th 659, 688 (2007). Plaintiffs do not dispute that the County is a public entity. Yet in their initial Complaint, Plaintiffs only asserted common law causes of action for negligence and loss of consortium under California law, and did not identify any statute under which a public entity like the County could potentially be held liable. ECF No. 1-1.

Plaintiffs concede this deficiency in their original Complaint and ask the Court for leave to file a First Amended Complaint pursuant to Rule 15(a)(2). ECF No. 26 at 5-6. Under Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave [to amend] when justice so requires." The rule is "to be applied with extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). The Court considers five factors in deciding a motion

7

for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended his complaint. In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir.2013). Of these factors, "the consideration of prejudice to the opposing party [ ] carries the greatest weight." Eminence Capital, F.3d at 1052.

This is the Plaintiffs' first request to amend the Complaint, and amendment at this early stage would not prejudice the opposing parties. Given the timing of Plaintiffs' request to amend, in the middle of briefing on the motion to dismiss, the County has had an opportunity to address the sufficiency of the proposed First Amended Complaint. Moreover, amendment is not futile for the reasons explained below. Therefore, the Court grants the Plaintiffs' request to amend and refers to the Plaintiffs' First Amended Complaint throughout the remainder of this Order.

In their First Amended Complaint, the Plaintiffs assert three causes of action against the County: (1) dangerous condition of public property under California Government Code § 835; (2) nuisance under California Civil Code § 3479; and (3) loss of consortium.[4] ECF No. 26-2. The Court addresses the sufficiency of each of these causes of action in turn.

### 1. Dangerous Condition of Public Property

Section 835 of the California Government Code provides that:

> Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

---

[4] Plaintiffs' First Amended Complaint also purports to assert a cause of action for "duty of public entity to warn against dangerous condition" under California Government Code § 830.8. ECF No. 26-2 at 12 ¶¶ 43-46. However, that statutory provision simply provides an exception to immunity for public entities against a claim for dangerous condition of public property in certain circumstances, and does not provide an independent cause of action. See Sutton v. Golden Gate Bridge, Highway & Transportation Dist., 68 Cal. App. 4th 1149, 1165 (1998); Pfeifer v. San Joaquin County, 67 Cal. 2d 177, 184 (1967) (explaining that the immunity exceptions in § 830.8 "do not come into play until existence of a 'dangerous condition' within the statutory definition is first shown"). The Court therefore considers the allegations under this cause of action as part of the Plaintiffs' dangerous condition of public property claim.

8

>
> (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Cal. Gov. Code § 835; Bonanno v. Central Contra Costa Transit Authority, 30 Cal. 4th 139, 146 ( 2003) (quoting Cal. Gov. Code § 835).  The statute defines a "dangerous condition" as one that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.  Cal. Gov. Code § 830(a).  A public entity may "protect against" such a condition by repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition.  Id. § 830(b).

      The Plaintiffs' First Amended Complaint plausibly states a claim for dangerous condition of public property under Section 835 for which the County could be held liable.  The Plaintiffs allege that the County "either owned, occupied, used and/or controlled the BNSF Track, the Crossing, the Access Rout [sic] to the Crossing, and/or all or a portion of the Subject Area."  ECF No. 26-2 at 11 ¶ 38.  According to the First Amended Complaint, "the combination of the Subject Area, roadway, live track, and unprotected Crossing was in a dangerous condition that created a substantial risk of the type of injury herein alleged."  Id. ¶ 44.  Plaintiffs further allege that the County created this dangerous condition by negligently failing to install warning devices such as automated gates or flashing lights to warn of the Crossing, failing to warn railroads and train crews about the high volume of traffic at the Crossing, failing to have security personnel on hand to prevent people from congregating near the BNSF Track and Crossing, failing to install barriers such as gates or fences to prevent vehicles and individuals from accessing the Subject Area for recreational purposes, and failing to install a sign to warn about the dangerous condition.  Id. ¶ 39.  In addition, Plaintiffs allege that the County had actual or constructive notice that people congregated and parked at and around the Subject Area, "including knowledge that multiple vehicles had been struck by trains travelling on the BNSF Track at the unprotected Crossing which

presented the significant potential for injuries," such that it could have protected against it. Id. ¶ 41. These allegations plausibly state a claim for dangerous condition of public property under Section 835.

### a. Due Care

The County argues that it cannot be held liable under Section 835 because Plaintiff Mangiaracina was not exercising due care when he performed a U-turn on the railroad tracks. ECF No. 9-1 at 5.

While it is true that the County may not be held liable for failing to take precautions to protect persons who do not exercise due care when using the property at issue, the test "is whether the condition created a substantial risk of harm to *persons, generally,* who would use the public property with due care in a forseeable [sic] manner," not whether the individual Plaintiff exercised due care. See Holmes v. City of Oakland, 260 Cal. App. 2d 378, 386-87 (1968) (emphasis in original). Because contributory negligence is a matter of defense, Mangiaracina does not need to allege that he was completely free from contributory negligence to survive a motion to dismiss. Id.

Moreover, the existence of a dangerous condition is generally a question of fact, and at this early stage of the proceedings the Court cannot conclude as a matter of law that the Subject Area and the unprotected Crossing did not create a substantial risk of harm to a person who used the area with due care in a foreseeable manner. Bonanno, 30 Cal. 4th at 148 ("The existence of a dangerous condition is ordinarily a question of fact . . . but it can be decided as a matter of law if reasonable minds can come to only one conclusion."). Several allegations in the First Amended Complaint, which this Court must accept as true, plausibly suggest that the Subject Area did in fact pose such a risk to reasonably prudent people. For example, the First Amended Complaint describes "the limited confines of the roadway and parking area in said vicinity adjacent to the live railroad track and unprotected Crossing." ECF No. 26-2 ¶ 14. It goes on to explain that, "in order to back up his vehicle, turn around and exit himself, Mr. Mangiaracina had to drive his pick-up truck ("Truck"), with an attached trailer, onto the Crossing." Id. ¶ 18. The Court infers from these allegations that performing a U-turn on the tracks may have been the only way to exit the area.

When construed in the light most favorable to the Plaintiffs, these allegations plausibly suggest that a person exercising due care and using the property in a reasonably foreseeable manner could nonetheless face a substantial risk of injury. Therefore, Plaintiffs' claim does not fail on this ground.

### b.   Failure to Provide Warning Signs

The County also argues that it cannot be held liable for the alleged negligent omissions because they relate to the failure to provide warning signs as described by the Vehicle Code. ECF No. 9-1 at 6.

"A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code." Cal. Gov. Code § 830.4. In addition, public entities like the County enjoy immunity "for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code." Cal. Gov. Code § 830.8. However, this immunity does not apply "when a warning sign is necessary to warn of a concealed trap" or a "dangerous hidden condition." Callahan v. City and County of San Francisco, 249 Cal. App. 2d 696, 704 (1967) (citing Cal. Gov. Code § 830.8)); Compton v. City of Santee, 12 Cal. App. 4th 591, 600 (1993). A dangerous hidden condition is one that "would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." Cal. Gov. Code § 830.8.

The Plaintiffs cannot state a claim for dangerous condition based solely on the County's alleged failures to install warning devices. The Plaintiffs allege that the County failed to "[r]equire installation of active warning devices on the Access Route, such as automated gates or flashing lights to warn," and to "[i]nstall a signal, sign, marking or device . . . that was necessary to warn of the dangerous condition . . . ." ECF No. 26-2 at 11 ¶ 39. These allegations fall squarely within the Vehicle Code's description of "traffic control device[s]" as "any sign, signal, marking, or device . . . placed or erected . . . for the purpose of regulating, warning, or guiding traffic," including "railroad warning approach signs." See Cal. Vehicle Code §§ 440, 21400.

Nor can the Plaintiffs successfully argue that the dangerous condition alleged in this case

was hidden or concealed such that immunity does not apply. Unlike the dangerous condition at issue in Callahan—"the appearance of a freeway where actually there was none" due to a combination of foggy conditions and the layout of the streets—a railroad track is always a clear indication of potential danger. Cf. Callahan, 249 Cal. App. 2d at 705; Wilkinson v. Southern Pac. Co., 224 Cal. App. 2d 478, 488 (1964) ("A railroad track is itself a warning of danger.").

But the Plaintiffs allege more than just a failure to erect warning devices described in the Vehicle Code. They also allege that the County failed to "[p]ublish to and warn train crews and railroads . . . to be mindful of the large number of bystanders congregating nearby," to "[h]ave security personnel on hand to ensure that people did not congregate and recreate in the Subject Area," and to "[i]nstall gates, fences or other physical impediments or barriers to prevent vehicles and individuals from accessing the Subject Area for recreational purposes." ECF No. 26-2 at 11 ¶ 39. The County does not point to any provision of the Vehicle Code that describes the publication of warnings to train crews or the provision of security personnel, and the Vehicle Code's definition of an "official traffic control device" specifically excludes "traffic barriers" from its scope. Cal. Vehicle Code §§ 440. All of these omissions constitute non-Vehicle Code measures that the County could have taken to "protect against" the dangerous condition. Cal. Gov. Code §§ 835(b) (defining "protect against" to include "providing safeguards against a dangerous condition, or warning of a dangerous condition"). Therefore, the Plaintiffs' claim for dangerous condition of public property does not fail on this basis.

### c. Recreational Use

Next, the County relies on California Civil Code Section 846 to argue that it cannot be held liable because it does not have a duty to keep the property safe for recreational use. ECF No. 9-1 at 6. However, that statute does not protect public entities like the County. Delta Farms Reclamation Dist. v. Superior Court, 33 Cal. 3d 699, 704-710 (1983).

Relatedly, the County argues that it is entitled to what is commonly referred to as trail immunity. ECF No. 30 at 3. Section 831.4 protects public entities from liability for injuries caused by the condition of a trail which provides access to a recreational area. Cal. Gov. Code § 831.4. "The plainly stated purpose of immunity for recreational activities on public land is to

12

encourage public entities to open their property for public recreational use." Armenio v. County of San Mateo, 28 Cal. App. 4th 413, 417 (1994). To determine whether an area is recreational for the purposes of Section 831.4, courts consider "accepted definitions of the property, the purpose for which the property is designed and used, and the purpose of the immunity statute." Amberger-Warren v. City of Piedmont, 143 Cal.App.4th 1074, 1078–79 (2006) (internal citations omitted). "Whether a particular road or trail comes under this immunity is ordinarily a question of fact." Treweek v. City of Napa, 85 Cal. App. 4th 221, 229 (2000).

The Court cannot conclude that the County is entitled to trail immunity as a matter of law at this juncture. The Plaintiffs do allege that the Subject Area "was consistently used by individuals to . . . picnic, swim, fish, as well as to launch and operate small boats, rafts and jet skis," and was "well known among local residents as a recreational area used by scores of individuals on a daily basis, especially during the summer months." ECF No. 26-2 at 5, ¶ 11. However, the Plaintiffs do not allege that either the Subject Area or the Access Route was designed to serve such a purpose; to the contrary, they allege that the purpose of the Access Route was "to provide a detour around a construction site at and around Fallman Road and the Middle River." Id. ¶ 12; Cf. Amberger-Warren v. City of Piedmont, 143 Cal. App. 4th 1074, 1079 (2006) (holding that a pathway in a dog park "qualifies as a trail because it is designed and used for a recreational purpose"). And nothing in the pleadings suggests that the Subject Area was "specifically put aside and developed for recreational uses." Montenegro v. City of Bradbury, 215 Cal. App. 4th 924, 931 (2013). Moreover, the mere fact that the Access Route provided access to a recreational area "does not necessarily mean it is a 'trail' within the meaning of the statute." Treweek, 85 Cal. App. 4th at 229-30.

The Plaintiffs may proceed with their claim for dangerous condition of public property under California Government Code Section 835.

### 2. Nuisance

In their First Amended Complaint, Plaintiffs also bring a cause of action for nuisance under California Civil Code Section 3479. ECF No. 26-2 ¶¶ 47-49. Plaintiffs allege that the County "owned, occupied, used and/or controlled the BNSF Track, the Crossing, the roadway

13

access to the Crossing, and all or a portion of the Subject Area, which created a dangerous condition of property in such a manner as to constitute a continuing public nuisance injurious to the health of individuals and vehicle drivers who congregated at, traveled to and from, and/or parked at and around the Subject Area, so as to interfere with their comfortable enjoyment of life or property." Id. ¶ 48. Plaintiffs further allege that this public nuisance was the proximate cause of Plaintiff Mangiaracina's injuries. Id. ¶ 49.

The County argues that it is immune from Plaintiffs' nuisance cause of action because several statutes expressly authorize public entities like the County to maintain the property at issue in the manner alleged by Plaintiffs. ECF No. 30 at 4-5. In addition, the County argues that the nuisance claim is preempted by federal law. Id. at 6.

### a. Express Statutory Authorization

"Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Cal. Civ. Code § 3482. Accordingly, if a statute "specifically permit[s]" an entity to act in a certain way, "such permission cannot give rise to a nuisance." Pekarek v. City of San Diego, 30 Cal. App. 4th 909, 917–18 (1994). However, California courts have "interpreted [Section 3482] narrowly," requiring that "the acts complained of are authorized by the express terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury." Nestle v. City of Santa Monica, 6 Cal. 3d 920, 938, n. 16 (1972) (quoting Hassell v. San Francisco, 11 Cal. 2d 168 (1938)).

As in Nestle, many of the statutes that the County relies on "are too general in nature to constitute the authority envisioned by section 3482." Nestle, 6 Cal. 3d at 938, n. 16. For example, the County points to Section 25801 of the Public Utility Code, but that Section merely permits a district to "acquire, construct, own, operate, control, or use rights of way, rail lines, [etc.] . . ." Cal. Pub. Util. Code § 25801. Nothing in that statute specifically permits the County to act in the ways that the Plaintiffs allege constituted a nuisance here—i.e., failing to install a physical barrier to prevent members of the public from accessing the area for recreational purposes, failing to

14

notify railroads, and failing to have security personnel on site. The same is true of the other California Public Utility Code provisions that the County relies on. See Cal. Pub. Util. Code § 25803 (prohibiting the district from "interfer[ing] with or exercis[ing] any control over any transit facilities . . . owned and operated . . . by any city or public agency, unless by consent . . . and upon such terms as are mutually agreed upon . . ."); Cal. Pub. Util. Code § 25804 (permitting a district to "lease or contract for the use of its transit facilities . . . to any operator"); Cal. Pub. Util. Code § 25805 (requiring districts to "maintain the area of the street or public highway between such rails and for two feet on either side thereof"). None of these statutes specifically permit the County to act in the manner alleged to have created the public nuisance.

The County also points to several provisions of the Vehicle Code that permit the County to maintain traffic control devices and erect railroad warning approach signs. See Cal. Vehicle Code §§ 21351, 21351.5, 21353, 21360, 21362, 21362.5. As explained above, those Vehicle Code provisions do not address several of the omissions alleged here—namely, the County's failure to erect physical barriers to prevent pedestrians and vehicles from accessing the Subject Area, failure to notify railroads, and failure to have security personnel on site. The Vehicle Code does not address this conduct, let alone expressly authorize it.

Because none of these statutes expressly authorize or permit the County to act in the manner that the Plaintiffs complain of, those statutes do not defeat the Plaintiffs' public nuisance claim.

### b. Federal Preemption

Lastly, the County argues that the Plaintiffs' state law public nuisance cause of action is preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). ECF No. 30 at 6.

The ICCTA provides that, "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). The Act defines "transportation" as "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers

or property, or both, by rail," as well as "services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property." Id. § 10102(9)(A)-(B).

"Where a tort claim would interfere with 'rail transportation' or 'operation' of railroad tracks or facilities, the regulation or claim is expressly preempted." Benson v. Union Pacific R. Co., 2008 WL 2946331, at *3 (E.D.Cal. 2008) (quoting City of Auburn v. United States, 154 F.3d 1025, 1031 (9th Cir. 1998)). However, the ICCTA does not preempt generally applicable state laws that have only a remote or incidental effect on rail transportation. Id. (quoting Emerson v. Kansas City S. Ry. Co., 503 F.3d 1126, 1130 (10th Cir. 2007)); Elam v. Kansas City Southern Ry. Co., 635 F.3d 796, 805 (5th Cir. 2011).

The ICCTA does not provide any cause of action or remedy for nuisance. Fayard v. Northeast Vehicle Services, LLC, 533 F.3d 42, 48 (1st Cir. 2008). And the alleged failures to act in this case do not relate to the movement of passengers or services related to that movement, but rather with "possibly tortious acts committed by a landowner who happens to be a railroad company." Emerson, 503 F.3d 1126, 1130 (10th Cir. 2007). Even if the alleged conduct fell within the statute's definition of "transportation," the state remedies sought here would have only an incidental effect on rail transportation.

The ICCTA does not preempt the Plaintiffs' state law nuisance claim.

### 3. Loss of Consortium

Although Plaintiff Chaloeicheep's loss of consortium claim is a common law cause of action, it is not barred against a public entity like the County where, as here, it derives from a statutory claim for dangerous condition of public property. See Delta Farms Reclamation Dist. v. Superior Court, 33 Cal.3d 699, 710 (1983).

Plaintiff Mangiaracina asserts a claim for dangerous condition of public property under Section 835, which imposes liability if "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred." Cal. Gov. Code § 835. In turn, an "injury" is broadly defined as "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that

16

it would be actionable if inflicted by a private person." Cal. Gov. Code § 810.8. Based on this broad definition of injury, which "imports a common law meaning into the statute," the California Supreme Court has held that relatives may recover damages for negligent infliction of emotional distress against a public entity where they also assert a claim for dangerous condition of public property. Delta Farms, 33 Cal. 3d at 710. Because Plaintiff Chaloeicheep's loss of consortium is the kind of injury that the law would redress if inflicted by a private person, she may recover for that injury against the County as well. Id. at 711; see also, e.g., Shelton v. Superior Court, 56 Cal. App. 3d 66, 72 (1976) ("[I]n California each spouse has a cause of action for loss of consortium, as defined herein, caused by a negligent or intentional injury to the other spouse by a third party.") (internal quotation marks and citations omitted).

**CONCLUSION**

The Court denies the Plaintiffs' motion to remand, grants the Plaintiffs' request for leave to amend, and denies the motion to dismiss.

IT IS SO ORDERED.

Dated: January 12, 2017

_____
JON S. TIGAR
United States District Judge