UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL MANGIARACINA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BNSF RAILWAY COMPANY, et al.,<br><br>    Defendants. | Case No.16-cv-05270-JST<br><br>**AMENDED ORDER DENYING DEFENDANTS' MOTION TO JOIN NECESSARY PARTY**<br><br>Re: ECF No. 61 |

Before the Court is Defendants' Motion to Join Necessary Party as Voluntary or Involuntary Plaintiff. ECF No. 61. The Court will deny the motion.[1]

**I.  BACKGROUND**

    **A.  Factual History**

In this personal injury action, Plaintiffs Joel Mangiaracina and his wife Ranee Chaloeicheep (collectively, "Plaintiffs") assert claims for negligence and loss of consortium against BNSF Railway ("BNSF"), National Railroad Passenger Corporation ("Amtrak"), Contra Costa Transportation Authority ("CCTA"), and Contra Costa County ("the County"). ECF No. 50 (First Amended Complaint).

Plaintiffs' injuries stem from a 2015 collision between a train and their vehicle. The incident occurred on a waterway known as the Middle River, near the town of Bixler in Contra Costa County. Id. ¶ 9. BNSF owns a railroad track just north of the area where people can access the river. Id. BNSF leases the track to Amtrak, which uses the track to transport passengers between Bakersfield and Oakland. Id. The BNSF track crosses Fallman Road ("the Crossing") near the Middle River access point. Id. As of August 2015, the Crossing "did not have bells,

---

[1] This order corrects a typographical error in the order issued August 10, 2017. ECF No. 72. It is identical to that order in all other respects.

whistles, horns, gates, flashing lights or other active warning devices installed to warn individuals that a train was approaching the Crossing." Id. ¶ 13.

The area immediately south of the Crossing and adjacent to the Middle River ("the Subject Area") "was consistently used by individuals to drive and park vehicles, congregate, picnic, swim, fish, as well as to launch and operate small boats, rafts and jet skis." Id. ¶ 11. The area "was well known among local residents as a recreational area used by scores of individuals on a daily basis, especially during the summer months." Id. The County owns or leases a portion of the Subject Area and the roadways leading to the Subject Area. Id. ¶ 12. The roadways leading to the Subject Area did not have gates or other barriers designed to stop individuals from accessing, congregating in or using the Subject Area to access the Middle River for recreational purposes. Id. ¶ 14. Plaintiffs allege that the Defendants "knew that there had been multiple instances of trains striking vehicles at the Crossing resulting in injuries." Id. ¶ 17.

On August 20, 2015, Plaintiff Joel Mangiaracina drove his truck to the Middle River access point. Id. ¶ 9. "[I]n an attempt to clear space for another recreational user to drive away, and in order to turn around and leave himself, [Mr. Mangiaracina] drove his pick-up truck (the 'Truck'), with a jet ski on the attached trailer, onto the BNSF Track at the Crossing." Id. ¶ 18. "While the Truck was stopped and waiting on the BNSF Track at the Crossing, Amtrak Train No. 713 (the 'Train'), heading West on the San Joaquin Route at a high rate of speed, struck the Truck and sent it flying through the air and landing in the water, thereby causing him to suffer severe, life threatening and permanent injuries." Id. When Mr. Mangiaracina's truck hit the water, it struck Mackenzie Crane, who was floating on a raft below. ECF No. 63 at 2. Ms. Crane suffered severe and permanent injuries. Id.

### B.     Procedural Background

On July 22, 2016, Mackenzie Crane filed a personal injury action in Contra Costa County Superior Court naming BNSF, Amtrak, CCTA, the County, and Mangiaracina as defendants. ECF No. 61 at 4. One week later, on July 29, 2016, Plaintiffs filed this personal injury action in Contra Costa County Superior Court. ECF No. 1-1. Defendant Amtrak subsequently removed the suit to federal court on the ground that it is a federally-chartered railroad that is majority-owned by the

United States and obtained the consent to remove from all defendants. ECF No. 1. In September 2016, CCTA filed a Motion to Dismiss, ECF No. 9, followed soon after by Plaintiffs' Motion to Remand, ECF No. 15. This Court denied both motions. ECF No. 49.

Defendants BNSF and Amtrak now move to join Ms. Crane as a necessary plaintiff under Federal Rule of Civil Procedure 19(a). ECF No. 61. Both Plaintiffs and Ms. Crane oppose the motion.[2] ECF Nos. 63, 64.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 19 governs required joinder of parties.[3] As summarized by the Ninth Circuit:

> A party may be [required] under Rule 19(a) in three different ways. First, a person is [required] if, in his absence, the court cannot accord complete relief among existing parties. See Fed. R. Civ. P. 19(a)(1)(A). Second, a person is [required] if he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest. See Fed. R. Civ. P. 19(a)(1)(B)(i). Third, a person is [required] if he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest. See Fed. R. Civ. P. 19(a)(1)(B)(ii).

Salt River Project Agriculture Improvement & Power District v. Lee, 672 F.3d 1176, 1179 (9th Cir. 2012).

Here, Defendants seek joinder of Ms. Crane as a plaintiff exclusively under the third prong of Rule 19(a).[4] ECF No. 61 at 5 ("[T]he central if not sole, inquiry is whether allowing this federal case to proceed in the absence of Ms. Crane as a party, would <u>subject BNSF and Amtrak to the substantial risk of inconsistent obligations</u>.") (emphasis added). Importantly, "[i]nconsistent

---

[2] By order dated July 26, 2017, the Court granted Ms. Crane's motion for leave to file an amicus curiae brief, noting that "she obviously has a stake in the motion's outcome [and] [i]t stands to reason that the Court should allow her to express a view as to its merits." ECF No. 70 at 2.

[3] "As of December 1, 2007, Rule 19 no longer refers to 'necessary' or 'indispensable' parties. Instead, it refers to 'persons required to be joined if feasible' and persons in whose absence, if they cannot be joined, the action should not proceed." E.E.O.C. v. Peabody W. Coal Co., 610 F.3d 1070, 1078 n.1 (9th Cir. 2010). According to the Advisory Committee notes to the 2007 amendment to Rule 19, the term "'indispensable' was used only to express a conclusion reached by applying the tests of Rule 19(b)," and was therefore "redundant."

[4] Because Defendants' do not advance arguments under the other prongs of Rule 19(a), the Court does not analyze them here.

obligations [under Rule 19(a)(1)(B)(ii)] are not . . . the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California, 547 F.3d 962, 976 (9th Cir. 2008) (quoting Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir.1998)).

"There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a) . . . . The determination is heavily influenced by the facts and circumstances of each case." N. Alaska Envtl. Ctr. v. Hodel, 803 F.2d 466, 468 (9th Cir. 1986).

### III. DISCUSSION

Defendants contend that Ms. Crane should be joined as a required party under Federal Rule of Civil Procedure 19(a)(1)(B)(ii). They argue that if this case proceeds in Ms. Crane's absence, Defendants will face a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." ECF No. 61 at 4. Specifically, Defendants argue that if Ms. Crane's case and this case proceed in parallel, the two courts may make "inconsistent findings of liability and damages," including making different findings with respect to comparative fault as between Defendants and Mr. Mangiaracina. Id. at 6. Defendants argue that, for example, if the state court in Ms. Crane's action attributes 90% comparable fault to Mangiaracina and a federal court finds Mangiaracina the sole cause of the collision, it would result in inconsistent obligations under Rule 19(a)(1)(B)(ii). Id. According to Defendants, since "[n]either case would have res judicata effect on the other, because the parties are not the same—the absence of Ms. Crane in the federal case creates the risk of inconsistency." Id. Defendants also suggest that "pragmatic considerations" further support the joinder of Ms. Crane as a plaintiff in this action. Id. at 5. Finally, Defendants accuse Mr. Mangiaracina's counsel of contributing to the inefficiency and potential of parallel proceedings by refusing to consent to removal of Ms. Crane's state court action to federal court. Id. at 4.

Plaintiffs and Ms. Crane counter that Defendants are conflating "inconsistent obligations" with "inconsistent adjudications." ECF No. 64 at 3-4; ECF No. 63-1 at 3-5. They cite several out-

of-circuit cases in which courts have emphasized this distinction in holding that the possibility of inconsistent findings of liability and damages in tort actions arising from the same incident does not make the plaintiffs required parties under Rule 19(a). See id. Plaintiffs dispute Defendants' suggestion that Plaintiffs' counsel has orchestrated a plan to prevent Defendants from consolidating these cases in federal court. ECF No. 64 at 2. Plaintiffs and Ms. Crane agree that it would be preferable for the two cases to proceed in the same court, but they argue that the cases should be consolidated in the Contra Costa Superior Court, not in federal court. Id. at 2; ECF No. 63-1 at 6. They point out that Defendants removed this case from state court knowing that they would be unable to remove Ms. Crane's case, and, in doing so, chose parallel proceedings over a single consolidated action in state court. ECF No. 64 at 2; ECF No. 63-1 at 6.

As an initial matter, the parties do not dispute that the prerequisites for joinder of required parties under Rule 19 are met—namely, that Ms. Crane is subject to service of process, her joinder would not deprive the court of subject matter jurisdiction, and that she has an interest in the instant litigation. Fed. R. Civ. P. 19(a)(1), (a)(1)(B). Thus, the question before the Court is whether resolving this case in Ms. Crane's absence would "leave [Defendants] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). The Court finds no such risk here.

"The Ninth Circuit has held that '[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.'" St. Paul Fire & Marine Ins. Co. v. Ins. Co. of the State of Pennsylvania, No. 15-CV-02744-LHK, 2016 WL 1191808, at *10 (N.D. Cal. Mar. 28, 2016) (citing Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California, 547 F.3d 962, 976 (9th Cir. 2008)). "Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." Id.

The "substantial risk" that Defendants contend they would be subject to if Ms. Crane is not joined in this case is that the state court may find Mr. Mangiaracina to be only partially liable for the accident that caused Ms. Crane's injury, while this Court may find Mr. Mangiaracina

5

completely responsible.  In this hypothetical situation, while the judgments of the two courts may be logically inconsistent – i.e. they may be inconsistent adjudications – they would not create inconsistent obligations as Rule 19 has been interpreted in the Ninth Circuit.  That is because Defendants would not be put in a situation where they could not comply with one court's order without breaching another court's order.  St. Paul Fire & Marine Ins. Co., 2016 WL 1191808 at *10; see also Delgado, 139 F.3d at 3 ("[T]he mere possibility of inconsistent results in separate actions does not make the plaintiff in each action a necessary party to the other.").  Moreover, Ms. Crane and Plaintiffs, even if they may make similar allegations, ultimately have very different claims – Ms. Crane was not in the same place (in the water, as opposed to on the bridge) and was not injured in the same manner as Mr. Mangiaracina and Ms. Chaloeicheep.  Thus, it is conceivable that two courts could make different, but not necessarily inconsistent, findings as to liability and damages.  Moreover, even if Defendants are found liable in both actions, they would not face "double" liability since the injuries are distinct.  See Coombs v. Munoz, No. C 09-00192 JSW, 2011 WL 2471278, at *2 (N.D. Cal June 22, 2011) ("Moreover where two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages.") (quoting Delgado, 139 F.3d at 3).

        The case on which Defendants primarily rely in their papers, Aguilar v. Los Angeles County, 751 F.2d 1089 (1985), does not hold otherwise.  In Aguilar, the plaintiffs brought suit in federal court, alleging that the defendant-hospital's negligence caused their son to suffer permanent brain damage.  Id. at 1091. The son was not a party in his parents' action, but instead brought his own claim through his guardian ad litem in state court.  Id.  The Ninth Circuit affirmed the district court's decision granting the defendant's motion to dismiss for failure to join the son as an indispensable party.  Id.  In a later decision, the Ninth Circuit clarified that it "concluded that the son was a necessary party because, under California law, he might have been collaterally estopped from relitigating issues determined adversely to his parents in the federal action." Takeda v. Nw. Nat. Life Ins. Co., 765 F.2d 815, 820 (9th Cir. 1985).  "[A] California court could conclude that the son and the parents were in privity with one another, and therefore, collateral

6

estoppel might have operated against the son." Id. Unlike Aguilar, where the parents and son were in privity, Mr. Mangiaracina and Ms. Chaloeicheep are not in privity with Ms. Crane. To the contrary, Ms. Crane actually asserts claims against Mr. Magiaracina. Although the district court in Aguilar concluded that the defendant might be "subject to a substantial risk of incurring inconsistent obligations" if the son was not joined as a plaintiff, the Ninth Circuit did not address this aspect of the district court's order, let alone affirm on that basis.

On reply, Defendants make a different argument.[5] They contend that if the cases proceed in parallel, "there is a risk that inconsistent determinations of the legal duties owed will give rise to inconsistent obligations for the railroads and directly implicate Rule 19 concerns." ECF No. 69 at 2. According to Defendants, because Plaintiffs and Ms. Crane make "identical" allegations in their complaints and "because the nature and extent of the obligations owed by the Railroads are a central issue in both lawsuits, the absence of Ms. Crane in this case creates the risk of inconsistent obligations." ECF No. 69 at 2-3. For example, Defendants argue that under a federal preemption statute for railway safety laws, "the problem when a singular rail crossing incident is litigated in two separate forums is one court may apply preemption and another may not. Should that occur the railroad would be faced with inconsistent obligations of either maintaining the nationally uniform track speed and whistle used at crossings or adjusting track speed and whistle patterns to meet different obligations imposed by a traffic court." ECF No. 69 at 3-4.

The Court disagrees. First, the fact that Plaintiffs and Ms. Crane may make some of the same allegations is irrelevant to the question of whether Ms. Crane is a required party in this case. Second, even if a state court and a federal court came to opposite conclusions regarding Defendants' legal duties, it would result in inconsistent findings as to liability, but not necessarily inconsistent obligations as interpreted by Ninth Circuit law. In this case, Plaintiffs seek damages, medical expenses, and costs of the suit. ECF No. 50 at 14. Neither Plaintiffs nor Ms. Crane seeks

---

[5] Though it is improper to raise new arguments in a reply brief, the Court will nevertheless consider Defendants' arguments because, given the Court's denial of the motion, doing so would not prejudice Plaintiffs or Ms. Crane. See M.H. v. Cty. of Alameda, 90 F. Supp. 3d 889, 895 (N.D. Cal. 2013) (exercising discretion to consider "improperly made new arguments in . . . reply brief" where non-moving party would not be prejudiced). Defendants are cautioned, however, that future violations of the Court's rules may not be treated as flexibly.

7

1  injunctive relief that would require Defendants to, for example, take steps to ensure safety at
2  crossings nationwide. Defendants are therefore at no risk of being "unable to comply with one
3  court's order without breaching another court's order." St. Paul Fire & Marine Ins. Co., 2016 WL
4  1191808 at *10. Moreover, Defendants would face the same risk with any case brought against
5  them in any state court by any plaintiff. The same legal issues raised in this case with respect to
6  track speed and whistle use, for example, are likely to be at issue in any tort case involving a
7  collision at a railroad crossing. Certainly, Defendants would not argue that plaintiffs in all such
8  cases brought in state court must be joined in this case. The risk of inconsistent adjudications is,
9  of course, a valid concern, and is not unique to situations involving parallel actions in state and
10 federal court. Indeed, even federal courts may apply the law differently depending on circuit
11 splits. However, involuntary joinder of a plaintiff under Rule 19(a) is not the vehicle to resolve
12 these issues. Accordingly, the Court concludes that Ms. Crane is not a required party under Rule
13 19(a)(1)(B)(ii).

Defendants alternatively request – again for the first time in reply – that the Court exercise its discretion under Federal Rule of Procedure 21 to add Ms. Crane as a plaintiff. ECF No. 69 at 6; Fed. R. Civ. P. 21 (to avoid dismissal for misjoinder, "the court may at any time, on just terms, add or drop a party."). The Court declines to do so. First, this is not a case where adding or dropping a party is necessary to avoid dismissing an action. Second, regardless of who is at fault, Ms. Crane, who simply happened to be in the wrong place at the wrong time – floating in a raft at the precise time of an accident on a nearby bridge – has suffered what she describes as "sever[e] and permanent injuries," and is entitled to pursue her claims in the forum of her choice. ECF No. 63-1 at 2. Though the Court is sympathetic to Defendants' concerns regarding efficiency and inconsistent adjudications, and agrees that it would be preferable to litigate these cases in the same court, the Court will not deprive Ms. Crane of her choice of forum where the law does not require it.[6]

---

[6] The Court also notes that simply joining Ms. Crane as a plaintiff in this case would not, by itself, streamline adjudication of these cases. As Defendants concede, even if the Court were to join Ms. Crane, Defendants would then have to seek a stay of Ms. Crane's state court action, which, depending on the stage of that case, the state court could deny. ECF No. 69 at 6.

**CONCLUSION**

The Court denies Defendants' motion to join Ms. Crane as a required plaintiff under Federal Rule of Civil Procedure 19(a).

IT IS SO ORDERED.

Dated: January 11, 2018

                                            JON S. TIGAR
                                   United States District Judge